# 24-748-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

JENNIFER ARAOZ

Plaintiff-Appellant,

- v. -

THE NEW ALBANY COMPANY LLC, THE WEXNER FAMILY
CHARITABLE FUND, THE YLK CHARITABLE FUND, ABIGAL S.
WEXNER, THE WEXNER FOUNDATION, and LESLIE H. WEXNER,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

BRIEF OF DEFENDANTS-APPELLEES

_____

Marion H. Little, Jr. (Ohio Bar # 0042679)
Matthew S. Zeiger (Ohio Bar #0075117)
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Attorneys For Defendants-Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendants-Appellees the New Albany Company, LLC, the Wexner Family Charitable Fund, the Wexner Foundation, and the YLK Charitable Fund hereby state, pursuant to Fed. R. App. P. 26.1(a), that they have no parent corporations and there are no publicly held corporations that own 10% or more of their respective stock.

# **TABLE OF CONTENTS**

**PAGE**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES .................................................... vii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE...................................................................1

    A.    Plaintiff Sues Defendants Because They All Employed Jeffrey Epstein And "Owned And/Or Controlled" The Property That Plaintiff Admits Was Actually Owned By A Non-Party ..............................................................1

    B.    Plaintiff Files, Pursues, And Stipulates To Dismiss A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries At Issue Here .............2

        1.    Before She Claimed That Defendants Owned And Controlled The Property And Were Liable For Damages, Plaintiff Maintained that A Different Set of State Court Defendants Owned And Controlled The Property And Were Liable For Damages ...................................2

        2.    Plaintiff Stipulates To Discontinue The State Court Action With Prejudice – No Settlement Or Release Agreement Was Filed On The State Court Docket ...................4

    C.    Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case .................................5

ii

**PAGE**

1.   In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants ..................................................................5

2.   Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint ...............7

3.   At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects.................................8

D.   Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court At Its September 7, 2022 Conference And Without Adding Any Allegations Supporting Her Res Judicata Arguments.................10

1.   The Complaint Was Still A Cut-And-Paste Job Arising From The Same Transactions And Occurrences Alleged In The State Court Action ...........................................10

2.   Omitted From The Complaint – Any Mention Of Any Settlement Agreement, Release, Or Participation In Any Victims' Compensation Program......................................11

3.   Omitted From the Complaint – Any Allegations Concerning Newly Discovered Evidence Or Purported Fraud ......................................................................................11

4.   Omitted From The Complaint – Any Specific, Non-Conclusory Allegations Sufficient To Establish Personal Jurisdiction Over Any Defendant .............................12

E.   Defendants Move To Dismiss. In Response, Plaintiff Attempts To Re-Write The Still-Defective, Already-Amended Complaint That She Knew Was Insufficient.....................12

iii

**PAGE**

1. Plaintiff Did Not Disclose Any Settlement Or Release Agreement And Did Not Argue That The District Court Should Apply "Contractual Privity" ........................................13

2. Plaintiff Added New Claims And More Than 500 Pages Of Exhibits Inappropriate For Consideration On A Motion To Dismiss ..............................................14

3. Plaintiff Asserted No Meaningful Argument In Favor Of Specific Jurisdiction ..........................................15

F. After The Motion To Dismiss Is Fully Briefed, Plaintiff Discloses For The First Time That She Purportedly Signed A Release Agreement With Epstein's Estate – But Still Says Nothing About "Contractual Privity." ................................16

G. The District Court Properly Grants Defendants' Motion To Dismiss ......................................................18

SUMMARY OF THE ARGUMENT .....................................................19

ARGUMENT ..........................................................................22

A. Standard Of Review ....................................................22

B. Res Judicata Bars Plaintiff's Claims In Their Entirety .......................23

1. Plaintiff Waived Her Argument In Favor Of Contractual Privity Asserted For The First Time On Appeal ..............................................................23

2. New York Law Does Not Recognize "Contractual Privity" In The Res Judicata Setting .........................26

a. New York Law Controls ....................................26

iv

**PAGE**

  b. New York Courts Apply Traditional Privity Preclusion In Determining Whether A Prior Action Resolved By A Release Or Settlement Precludes A Subsequent Action – *Not* Contractual Privity...........................................28

 3. The Second Circuit Would Not Treat Contractual Privity As Displacing Traditional Res Judicata Completely After Taylor v. Sturgell ........................................33

 4. Plaintiff's Reliance On Cases Having Nothing To Do With Res Judicata Have Nothing To do With Res Judicata And Should Be Disregarded ......................................34

 5. The District Court Correctly Held That No Exception To Res Judicata Applies For "New" Evidence Or Purported "Fraud."..................................................37

 6. New York's Doctrine Of Res Judicata Bars Plaintiff's Complaint ................................................40

C. The District Court Correctly Held That It Lacks Personal Jurisdiction Over Defendants ...........................................41

 1. Plaintiff Abandoned Her Argument In Favor Of General Jurisdiction ..................................................41

 2. Plaintiff's Arguments For Specific Jurisdiction Fail Under Any And Every Provision Of New York's Long-Arm Statute ..............................................................42

  a. Defendants' Affidavits Contravene Plaintiff's Conclusory Allegations, And Therefore Control ..........42

**PAGE**

b.      Under Edwardo, Plaintiff's Agency Allegations Fail To Establish Personal Jurisdiction Over Defendants As A Matter of Law ...................................46

c.      Specific Jurisdiction Does Not Exist Under Any Provision of NY CPLR § 302(a) ....................................48

3.      Permitting The Exercise Of Jurisdiction Over Defendants Would Run Afoul Of Due Process .......................51

4.      Transferring Claims Necessarily Foreclosed Under Ohio Law to an Ohio Federal Court, Which Plaintiff Should Never Have Asserted In New York In The First Instance, Is Not In The Interests Of Justice .............................52

CONCLUSION ....................................................................................54

CERTIFICATE OF COMPLIANCE ........................................................56

CERTIFICATE OF SERVICE ...............................................................57

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

Allianz Ins. Co. v. Lerner, 416 F.3d 109 (2d Cir. 2005) .........................................25

Am. Home Assurance Co. v. A.P. MollerMaersk A/S, 609 F. App'x 662
(2d Cir. 2015) .................................................................................................24

Bank Markazi v. Peterson, ⸺ U.S. ⸺, 140 S. Ct. 813 (2020).........................23

Bayer v. City of New York, 115 A.D.3d 897, 983 N.Y.S.2d 61
(2d Dep't 2014) .........................................................................................27, 40

Bethea v. Scoppetta, 275 A.D.2d 651 (N.Y. App. Div. 2000) ..............................29

Boguslavsky v. S. Richmond Sec., Inc., 225 F.3d 127 (2d Cir. 2000) ........28, 29, 34

Bryant v. Comm'r of Soc. Sec., 2015 WL 6758094 (S.D.N.Y. Nov. 5, 2015).........35

Celeste Tr. Reg. v. CBQ, Inc., 2006 WL 2053311 (S.D.N.Y. July 21, 2006)..........26

Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010).............51

Cho v. Blackberry Ltd., 991 F.3d 155 (2d Cir. 2021) ...........................................37

Colliton v. Bunt, 709 F. App'x 82 (2d Cir. 2018) ..................................................38

Corsair Special Situations Funds, L.P. v. Nat'l Res., 595 F. App'x. 40
(2d Cir. 2014)...............................................................................................23

Curry v. City of Syracuse, 316 F.3d 324, 331 n.4 (2d Cir. 2003) .........................27

Daimler AG v. Bauman, 571 U.S. 117 (2014) ......................................................41

Daros v. Tokoyo, 2005 WL 1229734 (E.D.N.Y. May 23, 2005) ...........................53

DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6, 8 (2d Cir. 2018) ..........42

**Cases** | **Page(s)**

Doe 1 v. JPMorgan Chase Bank, N.A., 2023 WL 3945773
(S.D.N.Y. June 12, 2023) ................................................................34, 35

Doe v. Trump Corp., 6 F.4th 400, 410 n.6 (2d Cir. 2021) ........................24

E. New York Sav. Bank v. Republic Realty Mortg. Corp., 61 A.D.2d 1001
(N.Y. App. Div. 1978) ..............................................................................46

Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69
(2d Cir. 2023)................................................................................*passim*

Emiabata v. Seton Healthcare Fam., 2021 WL 4256846
(2d Cir. Sept. 20, 2021) ...........................................................................52

Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110 (2d Cir. 1999) .............24

Esquire Trade & Fin., Inc. v. CBQ, Inc., 562 F.3d 516 (2d Cir. 2009) ...........*passim*

Exxon Mobil Corp. v. Healey, 28 F.4th 383 (2d Cir. 2022)....................................26

Fabri v. United Techs. Int'l, Inc., 387 F.3d 109 (2d Cir. 2004)...............................24

Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) .......................................................27

Giuffre v. Andrew, 579 F. Supp. 3d 429 (S.D.N.Y. 2022) ........................34, 35, 36

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)............41

Griffin v. Sheeran, 767 F. App'x 129 (2d Cir. 2019) .............................................26

Group One Ltd. v. GTE GmbH, F. Supp.3d 323 (E.D.N.Y. 2021)........................49

Harleysville Worcester Ins. Co. v. Wesco Ins. Co., 752 F. App'x 90, 93
(2d Cir. 2019) ..........................................................................................25

In re Hunter, 4 N.Y.3d 260 (2005)...............................................................26, 40

**Cases**                                                                     **Page(s)**

In re Layo, 460 F.3d 289 (2d Cir. 2006)....................................................37

Innomed Labs, LLC v. ALZA Corp., 368 F.3d 148 (2d Cir. 2004) .......................24

Jacqueline S. by Ludovina S. v. City of New York, 81 N.Y.2d 288 (1993) ...........51

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998)................................53

JFK Hotel Owner, LLC v. Hilton Hotels Corp., 42 Misc. 3d 1237(A) (N.Y. Sup. 2014) ............................................................................................................35

Johnson v. UBS AG, 791 F. App'x 240 (2d Cir. 2019) ...........................................45

Kidder v. Hanes, 2023 WL 361200 (W.D.N.Y. Jan. 23, 2023) ...............................54

Korenblum v. Citigroup, Inc., 2015 WL 6001275 (S.D.N.Y. Oct. 14, 2015)...........................................................................28, 29, 34

Lipman v. Rodenbach, 852 F. App'x 578, (2d Cir. 2021) ...............................*passim*

L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85 (2d Cir. 1999)............39

MacDermid, Inc. v. Deiter, 702 F.3d 725 (2d Cir. 2012) ........................................43

Martin v. United Bridge Cap., LP, 2022 WL 2166399 (2d Cir. June 16, 2022).................................................................................................43

Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57 (2d Cir. 2011) ..........................................................................................................38

Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984)........................26

Millea v. Metro-N. R. Co., 658 F.3d 154 (2d Cir. 2011)........................................23

Mitchell v. Reitnour, 2019 WL 5695946 (E.D.N.Y. Aug. 12, 2019).......................53

ix

**Cases**                                                 **Page(s)**

People ex rel. Spitzer v. Applied Card Sys., Inc., 11 N.Y.3d 105 (2008) ..............30

Peterson v. Islamic Republic of Iran, 876 F.3d 63 (2d Cir. 2017) .........................23

Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs., 2021 WL 4295418 (W.D.N.Y. Sept. 21, 2021) .......................................27

Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 2001 WL 38285 (S.D.N.Y. Jan. 16, 2001) ...................................................................29, 34

Rose v. Bersa, 2020 WL 5210913 (S.D. Ohio Aug. 31, 2020) ...............................53

Rosenshine v. A. Meshi Cosmetics Industries Ltd., 2021 WL 5508069 (E.D.N.Y Jan. 25, 2021) ..................................................................48

Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394 (2d Cir. 2003) ...................................................................40

Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572 (2d Cir. 1993) ...................................................................52

Shi v. Le, 2022 WL 896963 (E.D.N.Y. Mar. 28, 2022) ..........................................49

Silvar v. Comm'r of Lab. of State, 175 A.D.3d 95 (N.Y. App. Div. 2019)............31

Slupinski v. First Unum Life Ins. Co., 554 F.3d 38 (2d Cir. 2009).......................25

Spar, Inc. v. Info. Res., Inc., 956 F.2d 392 (2d Cir. 1992) ......................................52

Style Acupuncture v. Geico Indem. Co., 33 Misc. 3d 1231(A) (N.Y. Civ. Ct. 2011)...................................................................29

Swarna v. Al-Awadi, 622 F.3d 123 (2d Cir. 2010)...................................................47

Taylor v. Sturgell, 553 U.S. 880 (2008) ...................................................................33

| **Cases** | **Page(s)** |
|---|---|

Taylor v. Vermont Dep't of Educ., 313 F.3d 768 (2d Cir. 2002) ...........................22

TechnoMarine SA v. Giftports, Inc., 758 F.3d 493 (2d Cir. 2014) ........................22

Thompson v. Glob. Contact Servs., LLC, 2021 WL 3425378
(E.D.N.Y. Aug. 4, 2021) ...................................................................................29, 34

Tripathy v. McKoy, 2024 WL 2742344 (2d Cir. May 29, 2024) ...........................42

Wolo Mfg. Corp. v. ABC Corp., 349 F. Supp. 3d 176 (E.D.N.Y. 2018)...............48

World Wrestling Ent., Inc. v. Jakks Pac., Inc.,
425 F. Supp. 2d 484 (S.D.N.Y. 2006) ...................................................................37

Zunzurovski v. Finger, 2024 WL 836481 (S.D.N.Y. Feb. 28, 2024)......................47

| **STATUTES AND RULES** | **PAGE** |
|---|---|

NY CLPLR § 302(a) ................................................................................................48

NY CLPLR § 302(a)(1) ......................................................................................48, 49

NY CPLR § 302(a)(2) .............................................................................................50

NY CLPLR § 302(a)(3) ......................................................................................50, 51

NY CLPLR § 302(a)(3)(i) and (ii).........................................................................50

NY CLPLR § 302(a)(4) ...........................................................................................51

R.C. 2305.03(B).......................................................................................................53

xi

## JURISDICTIONAL STATEMENT

Defendants agree with Plaintiff's jurisdictional statement.

## STATEMENT OF THE ISSUES

1.  Whether Plaintiff waived the arguments advanced before the Court of Appeals?

2.  Whether the District Court committed a fundamental error in holding that res judicata bars Plaintiff's claims, which she already litigated to finality in a state court action that she stipulated to discontinue with prejudice?

3.  Whether the District Court committed a fundamental error in holding that Plaintiff's vague and conclusory allegations were insufficient to establish personal jurisdiction over the non-domiciliary Defendants?

## STATEMENT OF THE CASE

### A.   Plaintiff Sues Defendants Because They All Employed Jeffrey Epstein And "Owned And/Or Controlled" The Property That Plaintiff Admits Was Actually Owned By A Non-Party.

Plaintiff is a 36-year-old adult woman represented by counsel. [SA-145; Dkt. Entry 8.] Plaintiff alleges she was abused by Jeffrey Epstein as a minor at a property located at 9 East 71st Street in New York (the "Property"), more than twenty years ago. [SA-242.] She seeks to hold Defendants the New Albany Company, LLC, the Wexner Family Charitable Fund ("WFCF"), the Wexner Foundation, Mr. Leslie Wexner, Mrs. Abigail Wexner, and the YLK Charitable Fund

liable for her claimed injuries because "Defendants" employed Epstein and other "employees and agents" at the Property who Plaintiff contends contributed to her injuries. [SA-232 to 234, SA-238, SA-257.]

Plaintiff also insists that Defendants pay her damages because "all or some" of them "owned and/or controlled" the Property. [SA-242.] Except, as she admits later, they didn't. Non-party Nine East 71st Street Corporation did, and was the sole owner for twenty-two years, including the period of Plaintiff's alleged abuse. [SA-244, AA-259 to 260 ("Nine East acquired the property on September 6, 1989 and retained such title until … December 11, 2011.")]

### B. Plaintiff Files, Pursues, And Dismissed With Prejudice A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries At Issue Here.

#### 1. Before She Claimed That Defendants Owned And Controlled The Property, Plaintiff Maintained that A Different Set of Defendants Owned And Controlled The Property And Were Liable For Damages.

Approximately five years ago, however, Plaintiff claimed another group of defendants owned and controlled the Property and that they bore responsibility– a theory she pursued in state court in the action Jennifer Danielle Araoz v. The Estate of Jeffrey Edward Epstein, et al., Supreme Court of the State of New York, County of New York, Index No. 950010/19 (the "State Court Action"). [See AA-62 to 118.] Contrary to Plaintiff's representation, she was not "a young girl" when she pursued her State Court action in "in 2019," incapable of "assemb[ling] allegations" against

2

the proper defendants responsible for her injuries. [Appellant's Br. at 17.] She was between 31 and 32-years-old, represented by counsel [AA-118], and had the opportunity to conduct discovery even before suing. [AA-277 n.10.]

In language similar (and in many instances identical) to her allegations before the District Court, Plaintiff claimed in her October 10, 2019 Amended State Court Complaint that an unnamed recruiter lured her to the Property where she was abused by Jeffrey Epstein. [AA-64 to 66 AA-85 to 97, AA-105 to 115.] The Defendants included Epstein's estate and a number of individuals and entities—*including non-party Nine East 71st Street Corporation* – all of whom Plaintiff alleged were under Epstein's control:

- Nine East 71st Street Corporation, "which owned the title to, and was responsible for operating the property at 9 East 71st Street . . . At all times relevant herein, Nine East was controlled by Jeffrey Epstein, who served as its President & CEO." [AA-70.]

- NES, LLC, "a New York limited liability, conducting business" at the Property "which was controlled and/or owned by Epstein, who was employed as its President and CEO, and which was the management company for the property owned by Nine East at 9 East 71st Street .. . ." [AA-70.]

- Ghislaine Maxwell, who Plaintiff named as an employee of Epstein's non-profit organizations, the "COUQ Foundation and JEVI Foundation, working at and operating these businesses with Jeffrey Epstein at" the Property. [AA-68.]

- Lesley Groff, "an assistant of Jeffrey Epstein and employed at NES, working at" the Property, "and was one of the people in charge of scheduling for all Epstein's owned and/or controlled companies, foundations and trusts." [AA-69.]

3

- "Rosalyn S. Fontanilla A.K.A. Lynn Fontanilla . . . referred to . . . as the 'Maid,'" "an adult female working" at the Property and was "employed as the housekeeper and property manager by corporate defendants, NES and Nine East, and directly facilitated the sexual offenses [of] Epstein[.]" [AA-68.]

- The "Recruiter," "who . . . worked for NES, one of the other Epstein controlled entities, and/or for Epstein directly, and conspired with Epstein, Ms. Maxwell, Ms. Groff, Ms. Espinosa, and Ms. Fontanilla, and the Corporate Defendants and/or Institutional Defendants, to make possible and otherwise facilitate the sexual offenses committed against" Plaintiff. [AA-70.]

### 2. Plaintiff Stipulates To Discontinue The State Court Action With Prejudice – No Settlement Or Release Agreement Was Filed On The State Court Docket.

On November 13, 2020, Plaintiff stipulated to discontinue and dismiss the State Court Action "*with prejudice*." [AA-119 to 123.] The stipulation of discontinuance *does not* refer to, or otherwise incorporate by reference any settlement or release agreement executed by any parties. [Id.] Nevertheless, Plaintiff argues before this Court that public filings in the State Court Action expressly memorialized and disclosed the terms of Plaintiff's participation in "the Epstein Victims' Compensation Program," and/or some other out-of-court settlement or release agreement with the State Court Action defendants. [Appellant Br. at 4-5.] This is untrue.

*To be clear, Plaintiff never brought this, or any filing from the State Court Action to the District Court's attention—and she does not offer this Court a copy.* Plaintiff does not even attempt to "link" to any settlement agreement filed in the

State Court Action because there is none.[1] The closest document Plaintiff can identify (and purportedly "link" to) is a July 15, 2020 stipulation by the parties to stay the State Court Action pending their discussions relating to "participat[ing] in the Program." That's it.

### C. Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case.

#### 1. In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants.

On August 14, 2021, only ten months after dismissing the State Court Action, Plaintiff filed this action against Defendants in state court. [See SA-10 to 14] Defendants removed the action to federal court on January 7, 2022. As explained in their notice of removal, Defendants noted that during the period of alleged abuse, 2001 to 2002, "none of the Defendants had any association with or ownership interest in" the Property. [SA-2.]

Plaintiff was in no rush to file a complaint and, for many months, she did not.

---

[1]    Despite "linking" to filings from the State Court Action (albeit through URLs that, at least for Defendants, lead only to "System Error" messages on the New York State Unified Court System's website), Plaintiff does not "link" to any public filing of the settlement and/or release agreement. As Plaintiff agrees, "this Court may take judicial notice of the documents in the state court docket when considering whether a lawsuit is barred by res judicata." [Br. at 2, n.1.] It may therefore also take notice that Plaintiff never publicly filed any settlement agreement or release in the State Court Action.

Meanwhile, her counsel represented that Plaintiff wished to "avoid litigation." [SA-203 to 204.] Taking that representation in good faith, Defendants agreed to produce certain documents to him definitively proving that neither Mr. Wexner, nor any of the Defendants held any interest in or control over the Property between 2001 and 2002. [SA-203 to 205, SA-225 to 226.] The Court deferred entry of a case management order to permit Plaintiff's counsel to review these documents. [See AA-5, Dkt. Entry 2/16/22.] Such documents included: (1) Mr. Wexner's 1998 sale of his interest in the Nine East 71st Street Corporation; (2) The 1998 settlement statement reflecting the transaction and the apportionment of the real estate taxes; (3) the consideration paid to Mr. Wexner for the sale; and (4) Mr. Wexner's 1998 resignation of any officer status or association with Nine East 71st Street Corporation. [SA-203 to 205, SA-225 to 226.]

Once it became clear that no amount of information would suffice to convince Plaintiff to dismiss these baseless claims, Defendants requested that the Magistrate Judge compel Plaintiff to file her complaint on May 17, 2022. [SA-146.] The Magistrate Judge directed Plaintiff to file her complaint by June 8, 2022. [AA-6 (Dkt. Entry 5/19/22).]

### 2. Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint.

After requesting, and receiving, an additional three-week extension, Plaintiff at last filed her initial verified complaint on June 29, 2022, ***almost a full year*** after

she filed this lawsuit.  [SA-148 to 192.]  Still, for all the time she had to draft the initial complaint, not much of it was new.  If anything, it was largely a cut-and-paste job.

Of the 301 paragraphs in the initial verified complaint, as many as 189 paragraphs – ___*roughly two thirds of the complaint*___ – appear to be copied in whole or in part from Plaintiff's Amended State Court Complaint.  [AA-125 to 165 (highlighting the allegations taken from the Amended State Court Complaint).]  Nor did Plaintiff limit herself to just copying the factual allegations.  The claims she asserted against Defendants also echoed those alleged in the State Court Action:

- ___*Negligence on the theories of premises liability, negligent retention, and breach of the duty of voluntary assumption of care*___**:** Plaintiff alleged all three claims in the State Court Action against various State Court defendants – Epstein's estate, NES, Nine East 71st Street Corporation, Leslie Groff and Epstein employer Financial Trust Company – and now asserts the same claims in the federal action.

- ___*Conspiracy and Aiding and Abetting*___**:** both claims that appeared in the Amended State Court Complaint which are also alleged in the present action.

- ___*Even fraudulent transfer*___**:** Plaintiff had asserted that two Epstein-controlled entities had fraudulently transferred interest in the Property, but now claims that same fraudulent transfer was committed by Mr. and Mrs. Wexner among several entity Defendants.[2]

---

[2] While this list of claims is taken from Plaintiff's initial verified complaint, Plaintiff restated these same claims against the same Defendants in the First Amended Complaint. [SA-259 to 271.]

Only two changes were of note: whereas Plaintiff previously claimed that Epstein owned and controlled the Property through various employees, entities, and agents she now alleged "upon information and belief" that Mr. Wexner owned and controlled the Property through his employees, entities and agents. [SA-156 to 167, SA-178.] Additionally, instead of Epstein and his entities employing the persons at the Property, Plaintiff now alleged that the "employees of Wexner and or related entities," including all entity Defendants, "contributed the acts complained of herein." [SA-156 to 167, SA-182 to 192.]

### 3. At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects.

Plaintiff omits from her statement of the case the proceedings between the filing of her initial complaint and of the later, operative Complaint. But this Court should not. Relevant for purposes of this appeal, these proceedings show that the District Court put Plaintiff on notice of the res judicata and jurisdictional defects in her complaint. She just chose to ignore them.

On July 5, 2022, Defendants requested a pre-motion conference ahead of filing a motion to dismiss. Defendants cited Plaintiff's impermissible group pleading, the various ways in which her claims failed to plausibly state a claim upon which relief could be granted, and her attempt to establish jurisdiction upon

"information and belief" alone – not to mention the total absence of any alleged facts tying the Ohio-based Defendants to the state of New York. [SA-196 to 199.]

The Court held an in-person conference on September 7, 2022. [SA-281 to 310.] There, it echoed Defendants' concerns about over Plaintiff's complaint, and added a number of its own. In particular, the Court stated:

- "[T]here's . . . not a lot of clarity about what the individual defendant did versus what the organizational defendants did. One of them is not in existence anymore. . . . [T]he complaint just kind of randomly throws in that defendants as a group, employed people and there are other references to - - that claims are made on information and belief and just . . . you know, group pleading is a problem here because it's hard to tell who you're claiming did what." [SA-288, SA-295.]

- "You've got a fraudulent conveyance claim. I don't think that the New York statute extended the statute of limitations on fraudulent conveyance claims." [SA-284.]

- "And then look at this conspiracy – sort of free-floating conspiracy claim. I'm not sure that's a valid claim . . ." [SA-309.]

- "But you've got five Ohio-based defendants. And there has to be a basis for the exercise of personal jurisdiction over those defendants and I just want to understand what it is." [SA-297.]

Even the *res judicata* problem, which Defendants brought to the Court's and to Plaintiff's counsel's attention at hearing, struck the Court as a "pretty good argument." [SA-294.] Closing the hearing, the District Court remarked to Plaintiff's counsel, "these are all things you should consider, and consider whether or not this is an action you want to continue with." [SA-309.]

9

**D.      Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court Conference And Without Adding Any Allegations Supporting Her Res Judicata Arguments.**

**1.      The Complaint Was Still A Cut-And-Paste Job Arising From The Same Transactions And Occurrences Alleged In The State Court Action.**

Plaintiff filed the First Amended Complaint on January 6, 2023 –without any "consideration" for the Court's recommendations.  She asserted the same seven claims against the same six, Ohio-based, non-New York Defendants.  [SA-234 to 235, AA-252 to 271.] This time, she added an eighth claim for intentional infliction of emotional distress – not unlike the one she had alleged against various defendants in her State Court Action against Epstein's estate and others. [SA-271 to 272.] Roughly half of the Complaint – 119 paragraphs of 264 paragraphs – was still copied and pasted from the Amended State Court Complaint. [AA-172 to 219 (highlighting the allegations taken from the Amended State Court Complaint).]

Most importantly for res judicata purposes, Plaintiff reiterated her allegations that Defendants employed every wrongdoer that Plaintiff alleged she encountered at the Property—thereby establishing privity with the Defendants in the State Court Action.

10

### 2. Omitted From The Complaint – Any Mention Of Any Settlement Agreement, Release, Or Participation In Any Victims' Compensation Program.

Equally important considering Plaintiff's failure to preserve many of the arguments central to her appeal is what the Complaint *did not* include. It did not include, for example, any reference to the State Court Action. Plaintiff likewise did not allege or disclose that she participated in the "Epstein Victims Compensation Program." Nor did she disclose that she may have settled or released similar claims against one or more of the defendants she named in the State Court Action. [SA-232 to 276.] Nothing in the Complaint gave the District Court any indication that "contractual privity" – which New York Courts do not recognize in any event – might have any relevancy.

### 3. Omitted From the Complaint – Any Allegations Concerning Newly Discovered Evidence Or Purported Fraud.

Plaintiff did not identify, anywhere in her Complaint, any new evidence that she could not have discovered with reasonable diligence during the State Court Action, or that was fraudulently concealed from her in the State Court Action. Thus, she alleged no facts suggesting that Plaintiff intended to invoke any such exception.

11

**4. Omitted From The Complaint – Any Specific, Non-Conclusory Allegations Sufficient To Establish Personal Jurisdiction Over Any Defendant.**

While Plaintiff made a facile attempt to establish personal jurisdiction, she did so in only the most conclusory fashion, repeating that every single Defendant, despite her judicial admission that Defendants were residents of other states, "was essentially at home in New York." [See SA-239 to 24 ("This court has personal jurisdiction over Defendant The Wexner Family Charitable Fund because it conducted business in New York with a fair measure of permanence and continuity and was essentially at home in New York as Epstein served as Vice President of the Wexner Family Charitable Fund … This court has personal jurisdiction over Defendant The Wexner Foundation because it conducted business in New York with a fair measure of permanence and continuity and was essentially at home in New York as Epstein served as a trustee the Wexner Foundation.")]

Plaintiff relied exclusively on the "essentially at home" language of general jurisdiction. She did not invoke specific jurisdiction or cite to New York's long-arm statute governing specific jurisdiction, NY CPLR § 302.

**E. Defendants Move To Dismiss. In Response, Plaintiff Attempts To Re-Write The Still-Defective, Already-Amended Complaint That She Knew Was Insufficient.**

Citing these and other significant deficiencies, Defendants moved to dismiss the Complaint. [AA-14 to 59.] With respect to personal jurisdiction, Defendants

12

offered affidavits form Mr. and Mrs. Wexner, and from representatives of every entity Defendant, refuting Plaintiff's conclusory, unsupported allegations concerning their purported contacts with the state.  [AA-220 to 256.]

Plaintiff's memorandum in opposition to Defendants' motion ignored many of Defendants' arguments.[3]  Where she did respond, the counter arguments Plaintiff asserted get her no further on appeal.

> **1.     Plaintiff Did Not Disclose Any Settlement Or Release Agreement And Did Not Argue That The District Court Should Apply "Contractual Privity."**

*First*, Plaintiff did not assert that she had signed a release or other agreement with any defendants from the State Court Action. Nor did she argue that "contractual privity" applied to the court's res judicata analysis. Instead, Plaintiff disputed res judicata on Defendants' terms.  She claimed that traditional preclusion privity did not exist, that her federal claims "involve an entirely different set of facts" than those at issue in the State Court Action (cut-and-paste job notwithstanding), and that her claims are "based on new evidence" that Defendants, through some never-explained

---

[3]     Plaintiff did not respond to Defendants' arguments that: (1) she lacked standing to pursue her claim for declaratory relief asserted in Count I; (2) Counts III to VIII should be dismissed for impermissible group pleading; (3) she failed to plausibly allege any actionable wrongdoing by the New Albany Company, LLC; and (4) her fraudulent conveyance claim under NYDCLR § 273-a failed as a matter of law.  [AA-38 to 50.]

means, fraudulently prevented her from discovering during the State Court Action, to which they were not parties. [AA-274 to 279.]

> **2.** **Plaintiff Added New Claims And More Than 500 Pages Of Exhibits Inappropriate For Consideration On A Motion To Dismiss.**

_Second_, although a party may not use her opposition to a dispositive motion as a means to amend the complaint, Plaintiff attempted to do just that. She asserted four (4) new substantive claims against Defendants alleged nowhere in the Complaint; three claims for alleged violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and a fourth under the Racketeering Influenced and Corrupt Organizations Act (RICO). None had merit. [See AA-839 to 843 (Defendants' Reply.)]

Plaintiff also attached to her attach more than 500 pages of exhibits to her memorandum in opposition. [AA-270 to 274; AA-300 to 822.] None of here exhibits were integral to, or incorporated by reference in the Complaint, and Plaintiff did not argue that they were.[4] More to the point, _nothing in those 500-plus pages disclosed the existence of any settlement or release agreement, or made any mention of "contractual privity."_ Worse than that, Plaintiff conceded, however implicitly,

---

[4] "Unless a court is considering extrinsic material that is incorporated by reference into the complaint or on which the complaint relies or other matters of which the court can take judicial notice, it should remain within the non-movant's pleading when deciding … [Rule] 12(b)(6) motions." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021).

that even with hundreds of pages of extrinsic evidence, her Complaint still fell short of Iqbal/Twombly standards. She insisted that the district court afford her "*discovery … for the purpose of filing a sufficient complaint*." [AA-281 (emphasis added.)]

### 3. Plaintiff Asserted No Meaningful Argument In Favor Of Specific Jurisdiction.

*Third*, with respect to jurisdiction, Plaintiff quoted New York's long-arm statute NY CPLR § 302(a) in its entirety, but never identified what subsection(s) of § 302(a), if any, permitted the court to exercise jurisdiction over any Defendant. She instead parroted her conclusory allegations that Mr. Wexner, Mrs. Wexner, and every entity Defendant, "conducted business in New York with a fair measure of permanence and continuity and was essentially at home in New York and should reasonably anticipate being hauled into court." [AA-294 to 96 (repeating this phrase five (5) times over).] Seemingly aware that this was not enough, she also injected new facts not alleged in her Complaint and misrepresented the content of Defendants' affidavits to the district court. [AA-295 to 97.][5]

---

[5]    [See AA-849 ("Regarding Mr. Wexner, she alleges that he 'maintained a residence at the Property during the time in which Epstein was grooming the Plaintiff or at least rented the Property out to Epstein during this time' … Not so. Mr. Wexner attested that he never returned to the Property after 1994, and sold all shares in the corporation that Plaintiff admits actually owned the Property in 1998 – years before the 2001 to 2002 period when Plaintiff claims she was injured … Plaintiff claims that YLK 'at one point owned the Property.' This is untrue. Mrs. Wexner attested that YLK 'never had any interest, direct or indirect,' in the Property.")]

15

Defendants filed a reply in support of their motion to dismiss, pointing to these and many other shortcomings in Plaintiff's memorandum.  [AA-823 to 850.]

> **F.  After The Motion To Dismiss Is Fully Briefed, Plaintiff Discloses For The First Time That She Purportedly Signed A Release Agreement With Epstein's Estate – But Still Says Nothing About "Contractual Privity."**

On October 20, 2023, Defendants filed a notice of supplemental authority directing the District Court to this Court's decision in <u>Edwardo v. Roman Catholic Bishop of Providence</u>, 66 F.4th 69 (2d Cir. 2023), because of its significant relevance to Plaintiff's failure to sufficiently allege personal jurisdiction, particularly with respect to the purported agency relationship between Defendants and Epstein.  [AA-852 to 864.]

Plaintiff filed her own notice of supplemental authority on January 24, 2024.  [AA-865.]  She cited orders from two other cases that, as the District Court explained, "do not appear to be relevant" [AA-11 (Dkt. Entry 2/1/2024)], and portions of a deposition transcript that were previously sealed and stricken by Judge Loretta Preska in another pending action.  [AA-916 to 917.]  Plaintiff's one-page notice did not explain why she believed these authorities were relevant.  [AA-865.]

That same day, Defendants filed a letter requesting a pre-motion conference for leave to file a motion to strike Plaintiff's notice of supplemental authority citing

her violation of Judge Preska's explicit orders, and the irrelevance of the other two documents. [AA-916 to 917.][6]

On January 26, 2024, Plaintiff filed a responsive letter. There she revealed, ___*for first time in an action she had been litigating for more than two years*___, that "Plaintiff in this case signed" a release "with the Epstein Estate." [AA-919.] Contrary to Plaintiff's representation on appeal, this disclosure did not "explain in detail why these decisions were relevant" because "they denied res judicata in cases involving the same release that she signed." [Appellant's Br. at 20 n.10.] In reality, Plaintiff's January 26, 2024 letter did not even include the words "contractual privity" let alone advocate for its application. [AA-918 to 920.] And her single-sentence argument that "the banking case [Doe 1, 671 F. Supp. 3d 387] and the Prince Andrew case [Giuffre v. Andrew, 579 F. Supp. 3d 429 (S.D.N.Y. 2022)] are relevant to defendants' res judicata claims" was a non-sequitur, because as her own summary of those decisions showed, neither one says anything about res judicata or contractual privity. [AA-919.] Consequently, the District Court could not have possibly divined what unstated res judicata argument Plaintiff meant to assert even

---

[6]     [See AA-917 ("[O]n November 18, 2022, District Court Judge Preska held a hearing and issued an order denying the motion to unseal Doc. 363-7, a portion of the same document … Plaintiff filed in this case … The transcript was filed in violation of Judge Preska's sealing order on January 9, 2024 … Judge Preska struck the filing the next day because it 'contains information that should have been redacted.'")]

17

upon reviewing the <u>Doe 1</u> and <u>Giuffre</u> decisions. This is precisely why, in the District Court's view, Plaintiff's citations "do not appear to be relevant" – they *are* not relevant.

## G. The District Court Properly Grants Defendants' Motion To Dismiss.

On February 29, 2024, the District Court granted the motion to dismiss. [AA-921 to 932; AA-934 (accompanying judgment).] Regarding res judicata, it concluded: (1) that the stipulation of discontinuance from the State Court Action was a final decision on the merits; (2) that Defendants established privity because, according to Plaintiff's allegations, Defendants "in this action employed some of the defendants in the state action" and their "alleged liability … stems from this employer-employee relationship – a privity relationship sufficient for purposes of res judicata"; and (3) that Plaintiff's alleged injuries arose from the same nucleus of operative facts alleged in the State Court Action. [AA-927 to 930.]

With respect to Plaintiff's contention that her claims "depend on new evidence that was not available to her" in the State Court Action due to purported fraud, the court indulged Plaintiff by examining the hundreds of pages she submitted along with an affidavit from her counsel. But the court found that much of the "new evidence" that Plaintiff cited (consisting of several articles published in 2019 and 2020) was "publicly available" to her prior to her stipulation to discontinue the State Court Action on November 13, 2020. [AA-930 to 931.]

18

Unsurprisingly, the District Court did not address the arguments that Plaintiff never argued it should address – namely, that a release agreement existed and that, because the State Court Action was resolved through a release, contractual privity governed the question of res judicata.

Finally, the court agreed that Defendants' "jurisdictional argument also has merit," particularly in view of Plaintiffs' admissions that Mr. and Mrs. Wexner are citizens of Ohio, and that every other Defendant was "incorporated and maintain[ed] their principal places of business in other states." [AA-932.] Assuming that Plaintiff had "mean[t] to invoke specific jurisdiction" – an assumption that the district court described as "a leap since the complaint used only the language of general jurisdiction in claiming the defendants were 'essentially at home in New York'" – Plaintiff's allegations were "conclusory" and devoid of the "factual specificity" required to establish specific jurisdiction under this Court's precedent. [Id.]

## SUMMARY OF THE ARGUMENT

Both the law and Plaintiff's factual allegations (or lack thereof) necessitate that this Court affirm the District Court's judgment.

Because she previously litigated to finality claims arising from the same transactions and occurrences underlying her claims here, New York's res judicata doctrine bars Plaintiff's Complaint entirely. Not only did Plaintiff fail to raise the argument that contractual privity should instead control the res judicata analysis

before the District Court – which is the lynchpin of her appeal – she affirmatively agreed that traditional elements of res judicata should apply, disputing only whether such elements were met. She never informed the District Court that she purportedly signed a settlement or release agreement in resolving her prior State Court Action and never presented it to the District Court so as to include it in the record.[7] Nor does Plaintiff show that the would-be release is available through public court filings.

Plaintiff's waived arguments are reviewable only for fundamental error. But fundamental error can never be proven in this case, because even if this Court were to reach the issue of contractual privity (and it should not) the record is devoid of any evidence concerning the content of her never-produced release, making it impossible to determine the question she claims is central to contractual privity: whether the parties to the State Court Action intended to release Defendants in this action. [Br. at 21.]

Even then, Plaintiff faces the further insurmountable barrier that New York courts do not recognize contractual privity as she contends. Plaintiff does not point to a single case wherein any New York court has ever applied contractual privity to

---

[7]     Plaintiff's single-sentence disclosure that she signed a release, after briefing on the motion to dismiss was closed, and in a pre-motion letter filing considering a different matter, that did not refer to "contractual privity" at all, was in no way sufficient to provide the District Court notice that Plaintiff intended to assert an argument she never asserted.

determine whether res judicata barred a plaintiff who settled her first action from pursuing a second action. When New York's Highest Court has confronted that question, moreover it applied only traditional privity, asking whether the parties to the first case shared an interest with the parties to the second case – without any mention of contractual privity. This Court has done the same when applying New York res judicata law under similar circumstances.

Plaintiff's alternative argument that exceptions to res judicata for alleged fraud and new evidence get her no further. The affidavits she submitted before the District Court cannot be considered to resolve Defendants motion to dismiss under Rule 12(b)(6), and even if they are, much of the very evidence the affidavits point to was publicly available to Plaintiff before she stipulated to discontinue her State Court Action with prejudice. At bottom, plaintiff admits that her stipulation to discontinue the State Court Action amounts to a final judgment, she alleged privity relationships between Defendants here and those in the State Court Action, and both cases arose from the same transactions and occurrences. Res judicata warrants dismissal.

The District Court also correctly determined that it lacked personal jurisdiction over Defendants. Although conspicuously absent from her retelling of the proceedings below, the District Court expressly warned Plaintiff that she needed to allege specific allegations explaining why the Court could exercise jurisdiction

over the Ohio-based Defendants. Instead of doing so, she declared only in the most conclusory fashion that every Defendant was "essentially at home in New York" and that every Defendant employed every wrongdoer who allegedly harmed Plaintiff at the Property. Furthermore, Defendants submitted sworn affidavits controverting and disproving Plaintiff's vague assertions about their alleged contacts with the forum state. Nor can she hope to establish jurisdiction under New York's long-arm statute based on alleged agency relationships, following this Court's decision in Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69 (2d Cir. 2023).

**ARGUMENT**

### A.    <u>Standard Of Review.</u>

This Court reviews the district court's grant of motion to dismiss under Rule 12(b)(6) and its application of res judicata *de novo*. TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014). It also reviews the district court's grant of dismissal for lack of personal jurisdiction *de novo*. Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69, 73 (2d Cir. 2023). However, where an issue is not properly preserved, "fundamental error" is the standard of review. Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 795 (2d Cir. 2002).

**B.** **Res Judicata Bars Plaintiff's Claims In Their Entirety.**

    **1.** **Plaintiff Waived Her Argument In Favor Of Contractual Privity Asserted For The First Time On Appeal**.

"Arguments raised for the first time on appeal are deemed waived." Millea v. Metro-N. R. Co., 658 F.3d 154, 163 (2d Cir. 2011). "This rule applies even if a party ultimately presents an issue to the district court in an untimely manner, after briefing and argument on the merits is complete." Peterson v. Islamic Republic of Iran, 876 F.3d 63, 78 (2d Cir. 2017), vacated on other grounds sub nom. Bank Markazi v. Peterson, ––– U.S. ––––, 140 S. Ct. 813 (2020).

As detailed, Plaintiff failed to preserve the very arguments that are largely determinative of her appeal: (1) She never properly informed, nor argued before the District Court that she signed a settlement or release agreement in resolving the State Court Action; and (2) She never argued that contractual privity should apply. Plaintiff's single-sentence mention of a release in an unrelated letter "after briefing and arguments on the merits" of the motion to dismiss was "complete," amounts to no mention at all. Peterson, 876 F.3d at 78; see also Corsair Special Situations Funds, L.P. v. Nat'l Res., 595 F. App'x. 40, 43 (2d Cir. 2014) (third-party appellant failed to preserve argument raised in a "supplemental memorandum," rather than briefing on a substantive motion; was insufficient to preserve argument for appeal). Plaintiff can hardly fault the District Court for overlooking a single sentence in an unrelated letter filing and not using it as a springboard to imagine the never-asserted

23

arguments Plaintiff could have made, but didn't.  Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (courts need not "research any legal theory that comes to mind, and serve generally as an advocate").[8]

Plaintiff concedes that her unpreserved arguments are reviewable only for "fundamental error."  This standard is harsh.  "Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a criminal trial, and is so serious and flagrant that it goes to the very integrity of the proceeding."  Taylor, 313 F.3d at  795.  Going further than that, the error must _also_ "clearly contravene" an "existing" and "established rule of law."  Innomed Labs, LLC v. ALZA Corp., 368 F.3d 148, 155, 162 (2d Cir. 2004).

As explained infra, Plaintiff's argument in favor of contractual privity, is not an established rule of law – not under New York law.  Necessarily then, she cannot demonstrate fundamental error.  E.g., Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 122 (2d Cir. 2004) ("[W]e doubt that we could find fundamental error in a

---

[8]     Waiver, rather than forfeiture, is the proper term here, because Plaintiff not only failed to assert contractual privity before the District Court, she also "affirmatively argued before the district court" that traditional privity principals applied (though she disagreed as to whether Defendants had satisfied privity).  See Am. Home Assurance Co. v. A.P. MollerMaersk A/S, 609 F. App'x 662, 664 (2d Cir. 2015) (affirmatively taking the opposite position before the trial court is an "intentional relinquishment of a known right").  The distinction is significant, since waived arguments cannot be reviewed for plain error.  "Given that waiver means that the 'relinquishment' was 'knowing and intelligent,' the effect of waiver is that there was no error, and hence even plain-error analysis is unavailable."  Doe v. Trump Corp., 6 F.4th 400, 410 n.6 (2d Cir. 2021) (cleaned up).

district court's action on a state law claim in the absence of clear authority from the state's highest court.").[9]

This is especially true since there is no "factual" basis" to support this new legal argument. The purported release remains hypothetical; it is not found in the record or in public state court filings. As written by this Court: "Facts that are not in the record are not properly brought to our attention, and we do not consider them." Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 56 (2d Cir. 2009). When this Court last considered contractual privity, in fact, it held that "[t]o the extent" the district court applied res judicata based on a prior "[s]ettlement Agreement or the associated releases," "record was insufficient to support" that holding, *even though the settlement agreement was in the district court record*. Esquire Trade & Fin., Inc.

---

[9]     Insofar as this Court concludes that it has discretion to review any of Plaintiff's unpreserved arguments for plain-error, it has no obligation to clean up after a mess of Plaintiff's own making. Nothing prevented Plaintiff from asserting her contractual privity argument in district court – she simply decided not to. See Harleysville Worcester Ins. Co. v. Wesco Ins. Co., 752 F. App'x 90, 93 (2d Cir. 2019) (declining to exercise such discretion where appellant "could have asserted the position it takes on appeal as an alternative argument in the district court"); see also Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir. 2005) ("availability of argument below weighs against exercising discretion to hear the belated argument on appeal"). Even if the Court reviewed for plain error, the outcome would be no different. Again, New York courts do not recognize the concept of "contractual privity." "Since [Plaintiff] invites [this Court] to make new state law, the district court's disposition" of the res judicata issue "could not be plain error." Harleysville, 752 F. App'x at 93.

25

v. CBQ, Inc., 562 F.3d 516, 522 n.6 (2d Cir. 2009).[10]  Here, the Court has even less

than that – the only proof that a release even exists is that Plaintiff's counsel says it

does.  Plaintiff's "attorney's unsworn statements in a brief," much less an informal

pre-motion letter, "are not evidence."  Griffin v. Sheeran, 767 F. App'x 129, 133 (2d

Cir. 2019)).

For this reason alone, the Court should summarily reject her appeal.

### 2.   New York Law Does Not Recognize "Contractual Privity" In The Res Judicata Setting.

### a.   New York Law Controls.

Plaintiff forgets that her appeal concerns not federal, but New York law.  "It

is now settled that a federal court must give to a state-court judgment the same

preclusive effect as would be given … under the law of the State in which the

judgment was rendered."  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S.

75, 81 (1984); Exxon Mobil Corp. v. Healey, 28 F.4th 383, 398 (2d Cir. 2022).

New York adopts a "transactional analysis approach" to res judicata, meaning

that "once a claim is brought to a final conclusion, all other claims arising out of the

same transaction or series of transactions are barred, even if based upon different

theories or if seeking a different remedy."  In re Hunter, 4 N.Y.3d 260, 269 (2005).

---

[10]   See Celeste Tr. Reg. v. CBQ, Inc., 2006 WL 2053311, at *2 (S.D.N.Y. July 21, 2006), vacated sub nom. Esquire Trade & Fin., Inc. v. CBQ, Inc., 562 F.3d 516 (2d Cir. 2009) (discussing the language of the settlement agreement).

Additionally, "[a]n employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued."   Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs., 2021 WL 4295418, at *5 (W.D.N.Y. Sept. 21, 2021); see also Bayer v. City of New York, 115 A.D.3d 897, 897–99, 983 N.Y.S.2d 61 (2d Dep't 2014) (employees not named in prior suit against their employer were "entitled to rely upon the beneficial disposition" of that action because they were "employees of the Department whose conduct formed the basis of the plaintiff's allegations in the [earlier] action").

While federal precedent may be instructive in considering res judicata issues under New York law, this Court has carefully observed, and respected, distinctions between the two where New York courts differ in their analysis.  See, e.g., Curry v. City of Syracuse, 316 F.3d 324, 331-332, 331 n.4 (2d Cir. 2003) (district court "should not have accorded collateral estoppel" to prior finding under New York collateral estoppel, which "slightly different from federal collateral estoppel law" in that "the issue that was raised previously must be decisive in the present action"); Farrell v. Burke, 449 F.3d 470, 483 (2d Cir. 2006) (same).  Perhaps the best proof of such respect is the Court's decision in Lipman v. Rodenbach, 852 F. App'x 578, (2d Cir. 2021).  Like Plaintiff here, the Lipman plaintiff brought a federal action even though, pursuant to a settlement agreement, she previously stipulated to

discontinue with prejudice a state court action arising from the same facts.  Id. at

580–83.  Applying New York Law, this Court looked to traditional notions of

privity, including whether the defendant named in the second action shared an

interest with the defendant named in the first action.  See id. at 581 ("Privity will be

established when, for example, a nonparty 'shares control' of a litigation or when a

nonparty's 'interests are represented by a party to an action.'" (cleaned up.)).  It held

that res judicata barred the plaintiff's claims – ***without any mention whatsoever of***

***contractual privity***.  Id. at 581–84.

And Lipman got it right – New York Courts do not recognize "contractual

privity" for res judicata purposes.

> **b.  New York Courts Apply Traditional Privity Preclusion
> In Determining Whether A Prior Action Resolved By
> A Release Or Settlement Precludes A Subsequent
> Action – *Not* Contractual Privity.**

Plaintiff does not point to a single case wherein any New York court has ever

applied "contractual privity" to determine whether res judicata barred a plaintiff

from pursuing a second action. Rather, nearly every contractual privity case that

Plaintiff cites turns on the application of federal law, not New York law.[11]  As for

---

[11]    See Boguslavsky v. S. Richmond Sec., Inc., 225 F.3d 127, 130 (2d Cir. 2000)
(applying federal law and citing 18 Charles A. Wright et al., Federal Practice And
Procedure, § 4443 at 384 (1981)); Esquire Trade & Fin., Inc. v. CBQ, Inc., 562 F.3d
516, 520-522 (2d Cir. 2009) (applying federal res judicata law where prior federal
court action was dismissed by settlement); Korenblum v. Citigroup, Inc., 2015 WL
6001275, *1-2 (S.D.N.Y. Oct. 14, 2015) (applying federal law where prior settlement

the lone federal court decision that endorsed contractual privity when assessing claim preclusion under New York law, even that court admitted there was no New York precedent for doing so: "*[T]he Court is not aware of a case specifically discussing contractual privity … under New York law*." Thompson v. Glob. Contact Servs., LLC, 2021 WL 3425378, at *10 (E.D.N.Y. Aug. 4, 2021) (emphasis added.) Evidently, Plaintiff is not either.

As applied in federal court, contractual privity essentially collapses the two defenses of release and res judicata into one, dictating that preclusion applies "only if the parties to the settlement agreement in the first suit ... intended to release" the defendant named in the second suit. Korenblum, 2015 WL 6001275 at *2 (citing Boguslavsky, 225 F.3d at 130).

New York law, by contrast, recognizes that the two defenses each exist independently. "Both a defense of release … and res judicata may be premised upon 'a stipulation of settlement withdrawing a complaint of cause of action with prejudice.'" Style Acupuncture v. Geico Indem. Co., 33 Misc. 3d 1231(A) (N.Y. Civ. Ct. 2011). Furthermore, where a prior action is dismissed by settlement, res judicata will bar a subsequent action even if only traditional privity (as opposed to contractual privity) exists. See Bethea v. Scoppetta, 275 A.D.2d 651, 651–52 (N.Y.

---

resulting in judgment was issued by a federal court); Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 2001 WL 38285, *1-3 (S.D.N.Y. Jan. 16, 2001) (applying federal law where prior suit was a patent dispute resolved by settlement).

App. Div. 2000) (holding that petitioners, as parents of foster children who were plaintiffs in a class action settlement concerning the New York foster care system, were "in privity with the [class action] plaintiffs by reason of their close familial relation to members of the … plaintiff class," "are accordingly bound by the [prior] judgment" and could not assert claims based on "identical" issues).

Take, for example, the New York Court Of Appeals' decision in <u>People ex rel. Spitzer v. Applied Card Sys., Inc.</u>, 11 N.Y.3d 105 (2008). In <u>Spitzer</u>, New York's attorney general sought restitution and other relief on behalf of New York residents against the respondents (credit card issuers) for violations of New York's consumer protection laws. The problem, however, was certain New York residents "had opted to accept the benefits of a nationwide class action settlement with" a respondent bank referred to as CCB, which was approved by a California court. <u>Id.</u> at 111–12. "[O]ne specific portion of the relief" that the attorney general sought, restitution for claims arising during a particular time period, was "identical to that which the New York members of the … settlement class ha[d] already pursued to a final and binding judgment" in California. <u>Id.</u> at 124. As a result, the Court examined "the res judicata effect of the … settlement upon a portion of the Attorney General's claims for restitution." <u>Id.</u> at 121.

In determining whether the attorney general was in privity with the New York class members, the Court applied traditional New York law governing preclusion

30

privity, i.e., that "privity is not susceptible to a hard-and-fast definition" but informed "by reference to the policies that res judicata is designed to protect." Id. at 123. At issue was whether the attorney general and the New York class members represented the same interests and sought recovery for the same injury, ***not whether contractual privity existed between them based on the terms of the settlement agreement***. See id. at 125. ("Indeed, the Attorney General has asserted that restitution is about making consumers whole. The problem here is that the … settlement class members have already compromised their entitlement to a full measure of make-whole relief in a proper judicial forum."). Without any reference to contractual privity, New York's highest court held that "[a]s to that measure of relief," the attorney general was in privity with New York's residents and res judicata precluded him from seeking further recovery. Id. at 124–25; see also Silvar v. Comm'r of Lab. of State, 175 A.D.3d 95, 104 (N.Y. App. Div. 2019) (noting that the Spitzer court "held that because the Attorney General **was pursuing claims identical to the ones that had been released *that fact alone* established privity**." (Emphasis added.)).

Other New York courts considering prior actions voluntarily discontinued by settlement or release agreement have followed the same reasoning, *also* without regard to contractual privity. See Silvar, 175 A.D.3d at 104 ("The facts herein are virtually indistinguishable from [Spitzer] … respondents, on behalf of claimants,

31

seek to pursue their released dual wage claims … [a]s such, privity has been established between claimants and respondents" and "res judicata bars respondents from pursuing on claimants' behalf their released dual wage claims.").[12]

Further, there should be no question that following <u>Spitzer</u> requires the Court to apply the traditional New York standard of preclusion privity, rather than contractual privity here. Indeed, this Court did the same when it relied on <u>Spitzer</u> to hold that res judicata precluded the plaintiff's second-filed federal action in <u>Lipman</u>. <u>See Lipman</u>, 852 F. App'x at 581–82 (citing <u>Spitzer</u>, 863 N.Y.S.2d 615, 894 N.E.2d at 13). The outcome here should be no different.[13]

---

[12]  <u>Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner</u>, 72 A.D.3d 665, 667 (N.Y. App. Div. 2010) ("[I]n this case the identity requirement has been satisfied. Inasmuch as the relevant causes of action asserted in the 2000 action belonged to and were asserted on behalf of the corporation, the stipulation of settlement which discontinued that action with prejudice is binding on both the corporation and the trustee for purposes of res judicata analysis.").

[13]  As <u>Lipman</u> itself explains, superficial distinctions between the instant circumstances and <u>Spitzer</u> do not compel a different conclusion. Whereas <u>Spitzer</u> concerned "a defendant [who] asserted that res judicata barred the lawsuit because the plaintiff in that suit was in privity with a party that sued the defendant in a previous action," the defendant in <u>Lipman</u>, and the Defendants here, "argue[] that res judicata should bar the lawsuit against [them] because [they are] in privity with the defendant[s] … in a previous action brought by the same plaintiff." <u>Lipman</u>, 852 F. App'x at 581 n.3. "Nevertheless, the same concept of privity applies to both scenarios." <u>Id.</u>

32

### 3. The Second Circuit Would Not Treat Contractual Privity As Displacing Traditional Res Judicata Completely After *Taylor v. Sturgell*.

One may fairly question whether *this Court* still recognizes contractual privity, even under federal law, following the Supreme Court's decision in Taylor v. Sturgell, 553 U.S. 880 (2008). Taylor lays out the six exceptions to the general, federal rule of nonparty preclusion – that is, that judgements are ordinarily not binding on nonparties to the action. Id. at 893–95. Accordingly, in considering a particular res judicata defense on nonparty preclusion in Esquire, the Court looked first and foremost to whether any of the six Taylor exceptions applied. Esquire, 562 F.3d at 521-22. Finding that none did, it held that res judicata did not bar the plaintiffs' claims. Id.

Elsewhere in a footnote, the Court considered, separate and apart from preclusion, if the settlement agreement resolving the prior action could itself preclude the plaintiffs' claims: "To the extent that the district court held that this action is barred by the Settlement Agreement or the associated releases … the present record is insufficient to support that holding." Id. at 522 n.6. That is, instead of collapsing the defenses of release and res judicata into one, as dictated by contractual privity, this Court did what New York's courts do – treated the possibility that the plaintiffs' claims could be barred by res judicata *or* by a

settlement agreement independent of one another. And it appears that this Court has not applied contractual privity in any other case following its decision in Esquire.

Moreover, Plaintiff does not cite single case applying contractual privity where, as here, the prior settlement or release at issue was both: (1) not in the record and (2) not publicly available.[14] And this Court will not apply contractual privity where "the present record is insufficient" to do so. Esquire, 562 F.3d at 522 n.6.

### 4. Plaintiff's Reliance On Cases Having Nothing To Do With Res Judicata And Should Be Disregarded.

Plaintiff next contends that the Court should take guidance from Doe 1 v. JPMorgan Chase Bank, N.A., 2023 WL 3945773 (S.D.N.Y. June 12, 2023) and Giuffre v. Andrew, 579 F. Supp. 3d 429 (S.D.N.Y. 2022) in evaluating the contents of the alleged release agreement she never produced. Her argument is nonsensical.

Doe 1, as Plaintiff admits, concerned not res judicata, or contractual privity, but the plaintiff's motion to certify "a putative class of other people whom Epstein sexually abused and trafficked." Doe 1, 2023 WL 3945773 at *1. Defendant JPMorgan argued that class certification was inappropriate in view of the releases

---

[14]    See Korenblum, 2015 WL 6001275 at *2 n.1 (noting the court could consider the terms of the settlement agreement "as the agreement was publicly filed" in the prior litigation, which is not the case here); see also Boguslavsky, 225 F.3d at 129–30 (discussing application of settlement agreement in the record); Esquire, 562 F.3d at 522 n.6; Rocket Jewelry Box, 2001 WL 38285 at *1 ("The settlement also included a 'stipulation of dismissal' dismissing Rocket's claims with prejudice, which was 'so ordered' .. on May 17."); Thompson, 2021 WL 3425378 at *10 (quoting text of settlement agreement).

signed by prospective plaintiffs who had participated in the Epstein Victims Compensation Program. <u>Id.</u> at *2-4, *10. The court disagreed, concluding that "putative members of the class should not be excluded at this stage because they signed the ambiguous EVCP form agreement," but added that JPMorgan could still "introduce[e] further evidence in support of its interpretation of the [release] at a later stage of this case, such as summary judgement or trial." <u>Id.</u> at *4 n.5.

<u>Doe 1</u> may arguably be instructive in determining whether, separate and apart from res judicata, the release Plaintiff allegedly signed serves as an independent reason for dismissing her claims against Defendants.[15] Yet that question puts the cart before the horse, since Plaintiff has not shown that the hypothetical release even exists in the first instance. Accordingly, this Court is presented only with questions of res judicata and jurisdiction. Not the meaning of some never-produced release agreement.

The same goes for <u>Giuffre</u>, another decision not addressing res judicata. Other distinctions, furthermore, render <u>Giuffre</u> inapposite in terms of giving any clues about the release Plaintiff claims she signed but never produced. First, while the

---

[15] Plaintiff, after all, alleged that "all Defendants" in the federal action employed all the defendants named in the State Court Action, and "it is well-settled that dismissal of claims against a servant requires dismissal of those claims against his alleged master." <u>Bryant v. Comm'r of Soc. Sec.</u>, 2015 WL 6758094, at *7 (S.D.N.Y. Nov. 5, 2015); <u>see also</u> <u>JFK Hotel Owner, LLC v. Hilton Hotels Corp.</u>, 42 Misc. 3d 1237(A) (N.Y. Sup. 2014) ("The release of the underlying wrong would preclude a plaintiff from asserting claims against the controlling entity.").

Guiffre court was able to take judicial notice of the disputed release and analyze its text, the District Court and this Court in the instant case cannot. Giuffre, 579 F. Supp. 3d at 435, 435 n.20, 437-449. Second, the Giuffre release was based on a settlement agreement that "Ms. Giuffre and Epstein entered into" individually. Id. at 437. Accordingly, Guiffre does not even involve the release Plaintiff insists she signed – the one from the Epstein Victims Compensation Program. Simply put, Guiffre's legal conclusions about the text of some other release agreement, executed between some other parties, under some other state's law have no bearing on the meaning of the Program release that Plaintiff claims to have signed here – ***which is not before the Court in any event***.[16]

These cases are not relevant and the Court is not required to engage in the academic exercise of pretending they are. Plaintiff's invitation to speculate about non-existent evidence should be rejected.

---

[16]    Plaintiff also argues that the Court can surmise that the claimed release agreement she signed must not have released her claims against Defendants *in this case* based on the July 15, 2020 stipulation to stay filed *in another case*, namely the State Court action. That stipulation provides that "nothing herein requires Plaintiff to discontinue this action against any Defendants whom she does not release in the Program." [Br. at 27-28.] That stipulation tells us nothing about the contents of some other, separate release agreement that Plaintiff may or may not have executed later.

### 5. The District Court Correctly Held That No Exception To Res Judicata Applies For "New" Evidence Or Purported "Fraud."

Plaintiff also resorts to argument that her claims depended on "new evidence" not available to her in the State Action. "As a general rule, newly discovered evidence does not preclude application of res judicata." In re Layo, 460 F.3d 289, 292 (2d Cir. 2006). While exceptions may apply where "the evidence was either fraudulently concealed or when it could not have been discovered with due diligence," neither scenario applies here. Id. at 292.

As an initial matter, Plaintiff improperly attempts to back pedal the relevant date for determining whether she had sufficient access to information to August, 2019, when she filed her first complaint in the State Court Action. But the inquiry is not about what information was available to Plaintiff at the time she initiated the State Court Action – it is about what information was available to her *at any time during the pendency of the case* before she stipulated to discontinue the State Court Action. See, e.g., Cho v. Blackberry Ltd., 991 F.3d 155, 169 (2d Cir. 2021) ("Indeed, that is clearly not the case, given that the 'new evidence' they relied on to bring their claims against Zipperstein was ***publicly available prior to the dismissal*** of their [amended complaint]." (emphasis added)); see also World Wrestling Ent., Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 509 (S.D.N.Y. 2006), aff'd, 328 F. App'x 695 (2d Cir. 2009) ("WWE knew about Stanfull and Jakks's role in the bribery scheme

37

during the pendency of the Connecticut action and could have added a RICO claim in that action.").

Bearing in mind the correct date (and setting aside for the moment that the affidavits Plaintiff submitted with her memoranda in opposition to the motion to dismiss should not be considered _at all_)[17], the affidavit from Plaintiff's counsel Robert Hantman itself disproves her unsupported and never alleged fraud and new evidence theories by detailing a plethora of information publicly available to her before November 12, 2020. Specifically Hantman pointed to:

> (1) A 2002 New York Magazine Article in support of Plaintiff's claim that Epstein became Mr. Wexner's financial manager in 1987; (2) a document wherein Mr. Wexner appointed Epstein as his power of attorney in a record that has been publicly available since 1999; (3) an August 8, 2019 letter published by Mr. Wexner [see https://www.wexnerfoundation.org/letter-from-les/], detailing Mr. Wexner's shock and disgust at the claims against Epstein and acknowledging that Epstein had "misappropriated vast sums of money from [Mr. Wexner] and [his] family"; (4) a July 25, 2019 article from the New York Times entitled, "How Jeffrey Epstein Used the Billionaire Behind Victoria's Secret For Wealth and Women"; (5) an October 5, 2019 article from the Washington Post titled, "Epstein Accuser Holds Victoria's Secret Billionaire Responsible, As He Keeps His Distance"; and (6) two unspecified "NYC permits" from 2002, which according to Hantman, identify Mr. Wexner as the owner of the Property.

> [AA-300 to 313.]

---

[17]     Lively, 6 F.4th at 305; see also e.g., Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 68–69 (2d Cir. 2011) ("Matson's complaint contained no specific allegations in this regard, and the District Court properly rejected consideration of the affidavit."); Colliton v. Bunt, 709 F. App'x 82, 83 (2d Cir. 2018).

Hantman's admissions regarding this public information undermines itself disposes of Plaintiff's arguments regarding fraud and "new" evidence completely.

As this Court explained in Cho, information that "was publicly available prior to the dismissal" of the prior action necessarily cannot have been "fraudulently concealed or impossible to 'discover with reasonable due diligence.'" Cho, 991 F.3d at 169 (cleaned up). The result is the same under New York's narrow exception to res judicata due to fraud or discovery of new evidence. See e.g., Lipman, 852 F. App'x at 583 ("any claim that [plaintiff] could not have discovered the amendment with reasonable diligence is undercut by her acknowledgment that her lawyer discovered the amendment"). That plaintiff may not have personally been aware of these facts is irrelevant. See L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) (that plaintiff's "awareness of these [new] facts … came later" is insufficient to show that facts occurring earlier could not have been discovered with due diligence). Nor can this Court employ a more forgiving "due diligence" review merely because Plaintiff alleges she was injured as a minor. "[A] core principle of res judicata" is that parties must have the "right to rely upon the finality of the results of previous litigation," even if permitting a second action may arguably serve a claimed, but competing public interest. See Spitzer, 11 N.Y.3d at 112, 124 (affirming that the "public interest … does not justify giving the New York consumers bound by the [class action] settlement two chances to receive make-

39

whole relief"); <u>Scherer v. Equitable Life Assurance Soc'y of U.S.</u>, 347 F.3d 394, 400 (2d Cir. 2003) (res judicata serves "the strong public interest in economizing the use of judicial resources by avoiding relitigation").

No information was concealed from Plaintiff, and her own counsel confirmed that this same evidence was available to her all along. The District Court properly held that neither exception to res judicata has any application here.

### 6. New York's Doctrine Of Res Judicata Bars Plaintiff's Complaint.

Having disposed of Plaintiff's misguided arguments, the requisite elements of res judicata under New York law (a final judgment on the merits, privity, involving the same subject matter) are satisfied. <u>In re Hunter</u>, 4 N.Y.3d at 269.

Plaintiff "does not dispute that the stipulation of discontinuance in the [State Court] Action constitutes and adjudication the merits." [Br. at 19.] Similarly, she does not dispute that insofar as traditional preclusion privity – as opposed to contractual privity – controls (and it does) her repeated allegations that all Defendants had employment relationships with all individuals present at the Property establishes privity. <u>Bayer</u>, 115 A.D.3d at 897–99. And while Plaintiff reiterates "that the nature of her claims against the defendants in this case is different from that of her claims in the [State Court] Action," she cannot change the law. "[A]ll the claims in this suit arise out of the same 'series of transactions' as

[Plaintiff's State Court Action], even though the claims may be 'based upon different theories or ... seek a different remedy.'" Lipman, 852 F. App'x at 583–84.

The District Court properly dismissed Plaintiff's Complaint on res judicata grounds and this Court should affirm.

### C. The District Court Correctly Held That It Lacks Personal Jurisdiction Over Defendants.

#### 1. Plaintiff Abandoned Her Argument In Favor Of General Jurisdiction.

Personal jurisdiction may be either general or specific. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). A court may exercise "general jurisdiction" over a defendant when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home" there. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). In contrast, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id. It "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (cleaned up).

Although Plaintiff's Complaint "used only the language of general jurisdiction" by alleging that every Defendant is "essentially at home in New York," [AA-932], Plaintiff has abandoned any argument in favor of general jurisdiction on

appeal.[18]  Defendants therefore respond only to her arguments concerning specific jurisdiction.

### 2. Plaintiff's Arguments For Specific Jurisdiction Fail Under Each Provision Of The Long-Arm Statute.

Before addressing the individual provisions of NY CPLR § 302(a), Defendants note that Plaintiff's arguments uniformly fail for two primary reasons.

#### a. Defendants' Affidavits Contravene Plaintiff's Conclusory Allegations, And Therefore Control.

*__First__*, to survive a motion to dismiss, Plaintiff's is required to allege a prima facie case of jurisdiction over each Defendant.  The vast majority of her allegations were rote assertions that every Defendant employed every alleged wrongdoer at the Property, and that every Defendant "conducted business in New York with a fair measure of permanence and continuity and was essentially at home in New York." [SA-238 to 242, SA-252 to 272.] Her "conclusory non-fact-specific jurisdictional allegations" and "legal conclusions couched as a factual allegations" are insufficient to make this showing.  DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6, 8 (2d Cir. 2018).[19]

---

[18]    Tripathy v. McKoy, 2024 WL 2742344, *7 (2d Cir. May 29, 2024) ("Tripathy abandoned these claims … by failing to adequately present arguments challenging their dismissal in his opening appellate brief.").

[19]    In the few instances were Plaintiff alleged specific contacts with the state, Defendants' affidavits conclusively disproved her claims..  Plaintiff alleged, for example, that the "YLK Charitable Fund … at one point owned the Property where

Further, Plaintiff's jurisdictional allegations need only be accepted as true to the extent they are non-conclusory, factually supported, and "***to the extent they are uncontroverted by the defendant's affidavits***."  MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012) (emphasis added); see also Martin v. United Bridge Cap., LP, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022) (jurisdiction lacking where defendants "submitted uncontroverted affidavits with their motion").  Here, they were so controverted.

Plaintiff mischaracterized the affidavits below and now ignores them completely on appeal.  She contends, for example, that her "pleadings allege that the Wexner entities were effectively operated from New York by Epstein."  [Appellant's Br. at 37.]  Regardless of what Plaintiff "alleges," however, they were not.  Even by her own admission, not one of the entity Defendants is organized under New York law, or maintains a principal place of business in New York.[20]  None "were

---

Plaintiff suffered her injuries."  [SA- 240.]  In truth, "YLK never owned any real property in the state of New York.  [AA-251.]

[20]    [See SA-235 to 239 (Alleging that Mrs. Wexner is "a citizen of Ohio"; the New Albany Company LLC "is a Delaware Limited Liability Company with its principal place of business in Ohio"; YLK Charitable Fund was a Delaware non-profit corporation and at the time of its existence, "its principal place of business [was] in the State of Ohio"; the Wexner Family Charitable Fund "is a Delaware non-profit corporation with its principal place of business in the State of Ohio"; and the Wexner Foundation is "an Ohio non-profit corporation with its principal place of business in Ohio." Plaintiff made no specific allegation about Mr. Wexner's citizenship, but alleged that complete diversity exists, therefore conceding that he is not domiciled in New York.)]

43

effectively operated from New York" either. Mrs. Wexner, for example, attested in her affidavit on behalf of YLK that "YLK never owned any real property in the state of New York," including the Property where Plaintiff alleges she was harmed. [AA-251.] Mrs. Wexner conducted her work as YLK president "exclusively in Ohio." [AA-250.] Additionally, "YLK never leased or maintained an office in the state of New York"; "YLK never contracted or supplied goods or services in the state of New York;" "YLK never transacted any business within the state of New York." [AA-251.] The YLK affidavit also controverts and disproves Plaintiff's assertion that it was operated "by Epstein from New York": "YLK never has had any agents or employees who reside in the state of New York." [Id.] The same is true for every other entity defendant.

Similarly, even if they were sufficiently alleged and not wholly conclusory, Plaintiff's claims that Mr. Wexner gave "Epstein free reign to use and control a property in New York for the purposes of recruiting and trafficking his victims and paying Epstein's accomplices" would be relevant only if these alleged events occurred during the period that Plaintiff alleges she was abused – otherwise, her injuries would not "arise out of or relate to" Mr. Wexner's purported contacts of the forum state, as specific jurisdiction requires. But they did not.

Mr. Wexner attested that he and his wife "vacat[ed]" the Property in 1994 and "never returned." [AA-235 to 236.] Craig White, the Wexners' director of security,

corroborated this statement. [CITE.] Mr. Wexner's home is in Ohio, and has been since 1992. [AA-235.] It is undisputed, moreover, that Mr. Wexner did not own the Property, non-party Nine East 71st Street Corporation did, including during the period that Plaintiff was allegedly injured. In 1998, Mr. Wexner sold all of his interest in Nine East 71st Street Corporation to a New York limited liability company in which he "never had any interest." [AA-236 to 237.] That same year, he resigned his position "as the sole Director and President" of Nine East 71st Street Corporation. Mr. Wexner supported each of these attested to facts with supportive documentation, including documentation of his sale of interest in the Corporation and his resignation. Thus, Mr. Wexner has "had no interest, either direct or indirect in the Property" since 1998, and was never present there at all after 1994.

Plaintiff, however, alleges she was not injured at the Property until 2001, at least three years after the sale and seven years since Mr. Wexner had ever been there. Accordingly, even if taken as true, her allegations of Mr. Wexner's New York contacts do not, in any way, arise from or relate to her alleged injuries. Mr. Wexner's alleged unrelated contacts with the state do not weigh in favor of finding specific jurisdiction either. See Johnson v. UBS AG, 791 F. App'x 240 (2d Cir. 2019) (a plaintiff cannot "add up" a defendant's general, unrelated contacts with the forum to make a case for specific jurisdiction).

45

Plaintiff cannot dismiss Defendants' affidavits simply by characterizing them as "self-serving." That the only evidence of jurisdiction does not support her argument does not make it any less valid.

### b.    Under Edwardo, Plaintiff's Agency Allegations Fail To Establish Personal Jurisdiction.

*Second*, Plaintiff contends that personal jurisdiction exists because, per her conclusory allegations, "Epstein … acted as [Mr. Wexner's] agent." [Appellant's Br. at 37.] This Court's decision in Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69 (2d Cir. 2023) forecloses that avenue through several holdings relevant here.

"To establish agency under section 302," Edwardo instructs that "the non-resident principal must request not just the alleged agent's general presence in New York *but also the activities giving rise to suit*." 66 F.4th at 74 (emphasis added.) Plaintiff alleges – albeit in an utterly conclusory fashion – that the Wexners knew of the alleged abuse. [Br. at 38.] But even if that assertion is credited as true, it does not establish that the Wexners ever *requested* Epstein's misconduct, or requested that he commit such conduct in New York. Indeed, the Complaint is devoid of any such allegation, and Plaintiff does not argue otherwise. See E. New York Sav. Bank v. Republic Realty Mortg. Corp., 61 A.D.2d 1001, 1002 (N.Y. App. Div. 1978) ("The activities of the representative in New York will be attributed to the nondomiciliary

46

if it requested the performance of those activities in New York, and those activities benefit it."). For this reason alone, specific jurisdiction by agency is non-existent.

Another holding that prevents her from doing so is that an out-of-state principal must benefit from the agent's alleged activities in New York. "New York courts" however, "consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." Swarna v. Al-Awadi, 622 F.3d 123, 144–45 (2d Cir. 2010); accord: Edwardo, 66 F.4th at 74. Plaintiff again insists that Edwardo is distinguishable because she alleged that the Wexners benefitted from Epstein's wrongdoing. Her allegations do not trump the law. "And under New York law, an employee who commits sexual assault is not acting as an agent of his employer." Zunzurovski v. Finger, 2024 WL 836481, *3 (S.D.N.Y. Feb. 28, 2024).

Finally, like Plaintiff here, the Edwardo plaintiff sought to hold the out-of-state principals for the agent that harmed him in New York liable for their negligent oversight for failure to supervise him, which he claimed permitted the exercise of jurisdiction over the principals under NY CPLR § 302(a)(2). Again, this Court rebuffed that argument. "Even if Defendants' own negligence or failure to intervene caused Edwardo's injury in New York, their conduct (or lack thereof) occurred entirely in Rhode Island." Edwardo, 66 F.4th at 75.

47

### c. Specific Jurisdiction Does Not Exist Under Any Provision of NY CPLR § 302(a).

Having set the foregoing ground rules, Plaintiff's arguments as to each provision of NY CLPLR § 302(a), which disregard Defendants' affidavits, <u>Edwardo</u>, and other law, fail at every turn.

***No jurisdiction exists under § 302(a)(1).*** New York courts may exercise jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Regarding Mr. and Mrs. Wexner, Plaintiff made no allegations concerning their personal contacts with the state whatsoever.

Further, although Plaintiff assumes that she can treat the entity Defendants' alleged contacts with New York as if they are Mr. or Mrs. Wexner's contacts, she is wrong there too. In New York, the owners of a company are "generally not subject to personal jurisdiction as a result of the company's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner." <u>Wolo Mfg. Corp. v. ABC Corp.</u>, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018).

Plaintiff does not allege any facts sufficient to pierce the corporate veil and does not argue as much on appeal. Under the theory that the Defendant entities acted as their agents, "plaintiffs must show that the officer was a 'primary actor' and not just an employee who played no part in the wrongdoing alleged." <u>Rosenshine v. A. Meshi Cosmetics Industries Ltd.</u>, 2021 WL 5508069, at *3 (E.D.N.Y Jan. 25, 2021).

The fundamental question is whether plaintiff has made a "showing that the officer engaged in *personal* conduct that is related to the transaction that underlies the claim." Group One Ltd. v. GTE GmbH, F. Supp.3d 323, 336 (E.D.N.Y. 2021) (emphasis in original). It is not enough to make "a general allegation that an officer is in control of a corporation." Id. Nor is it sufficient to merely point to the fact that the defendant was a corporate officer. See id. (claims that defendant "is the CEO, sole employee, and sole [o]wner of" corporate defendant "is insufficient to establish that he had personal involvement with the alleged illegal acts"). Yet that is all Plaintiff offered – assertions that Mr. Wexner "controlled or owned" the entity Defendants, and various other unnamed "companies, foundations, and trusts," and therefore must be behind their vaguely alleged, purported wrongdoing. Her allegations are insufficient.[21]

Regarding the entity Defendants, Plaintiff's blanket assertions that all "conducted business in New York with a fair measure of permanence and continuity," etc., are insufficient, and Defendants' affidavits uniformly refute them in any event. Plaintiff fails to establish jurisdiction under § 302(a)(1).

---

[21]     The same is true for Mrs. Wexner. "Courts in this circuit have consistently found that 'jurisdiction over a corporation or charity's board member, officer or employee, who is sued in his individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his official capacity." Shi v. Le, 2022 WL 896963, *2 (E.D.N.Y. Mar. 28, 2022) (cleaned up.)

49

***No jurisdiction exists under § 302(a)(2).*** This subsection permits specific jurisdiction over an individual who in person or through agent, "commits a tortious act within the state." Plaintiff cannot establish jurisdiction by agency for the reasons already stated: (1) "sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business" for agency purposes; (2) Plaintiff does not allege that Mr. Wexner, or any other Defendant "requested" that Epstein engage in unlawful behavior in New York; and (3) negligent acts taking place outside of New York, "such as negligent hiring" that cause injury in the state "does not confer jurisdiction under § 302(a)(2)." Edwardo, 66 F.4th at 73-75.

Plaintiff fails here as well.

***No jurisdiction exists under § 302(a)(3).*** This subsection provides for specific jurisdiction over persons who "commits a tortious act without the state causing injury to person or property within the state," only if such a defendant:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

Plaintiff neglects § 302(a)(3)(i) and (ii) completely, and does not argue that she has satisfied either requirement for any Defendant. And she has not.

50

Each entity Defendant submitted an affidavit detailing that they never held any interest in the Property, never owned real property in the state of New York, do not maintain offices in New York, and do not have employees in the state. [AA-256 (on behalf of New Albany Company, for example).] And again: Plaintiff never made any allegations concerning Mr. & Mrs. Wexner's personal contacts with the state, which are proven to be minimal at best as stated in their affidavits. Plaintiff fails to establish jurisdiction under § 302(a)(3).

*__No jurisdiction exists under § 302(a)(4).__* Personal jurisdiction may exist over a defendant who "owns, uses or possesses any real property situated within the state." Not a single Defendant owned or possessed the Property, directly or indirectly at the time of Plaintiff's alleged injuries.[22] Enough said.

### 3. Permitting The Exercise Of Jurisdiction Over Defendants Would Run Afoul Of Due Process.

Given the foregoing, this Court need not consider whether the exercise of personal jurisdiction comports with the Due Process Clause. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). The result, however, would be the same.

---

[22] Additionally, Plaintiff points to no case law wherein any court has found that the exercise of personal jurisdiction over a defendant proper under this provision when the defendant did not own, control, or possess the property at the time of the alleged harm. The only case cited in this portion of her brief, Jacqueline S. by Ludovina S. v. City of New York, 81 N.Y.2d 288 (1993), says nothing about personal jurisdiction.

51

Plaintiff's recitation of her disproved allegations does not control the minimum contacts inquiry. Defendants' affidavits do. See Emiabata v. Seton Healthcare Fam., 2021 WL 4256846, at *2 (2d Cir. Sept. 20, 2021) (plaintiff not entitled to jurisdictional discovery where he failed to controvert defendants' affidavits demonstrating that "defendants did not fall under the purview of Connecticut's long-arm statute and did not have minimum contacts with Connecticut"); Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993). They confirm that minimum contacts are lacking and the exercise of jurisdiction over Defendants is improper.

### 4. Transferring Claims Necessarily Foreclosed Under Ohio Law to an Ohio Federal Court, Which Plaintiff Should Never Have Asserted In New York In The First Instance, Is Not In The Interests Of Justice.

Lastly, this Court should not transfer Plaintiff's action to the United States District Court for the Southern District of Ohio. Transfer is not in the interest of justice where it would "reward plaintiff[] for [her] lack of diligence in choosing a proper forum." Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394 (2d Cir. 1992). The District Court warned Plaintiff that she had to allege sufficient facts to warrant exercising jurisdiction over the "Ohio-based" Defendants. Her only attempt to do so was a blanket assertion that every non-domiciliary Defendant "was essentially at home" in New York and employed every individual alleged to have caused her harm.

52

She had to have known that her "legal conclusion[s] couched as … factual allegation[s]" would not suffice. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998.)

Plaintiff's "casual disregard for the law and her decision to force [Defendants] to incur the expense of moving to dismiss should not be rewarded with a free pass to [another] District Court." Mitchell v. Reitnour, 2019 WL 5695946, *5 (E.D.N.Y. Aug. 12, 2019), R&R adopted 2019 WL 4253977 (E.D.N.Y. Sept. 9, 2019) (declining to transfer action where plaintiff "was repeatedly put on notice" that personal jurisdiction was lacking). "It simply is not in the interest of justice for a court to indulge a plaintiff who filed on the eve of the expiration of the limitations period[] in a court that plainly lacks personal jurisdiction over defendants[.]" Daros v. Tokoyo, 2005 WL 1229734, at *2 (E.D.N.Y. May 23, 2005)

There is little utility, furthermore, in transferring Plaintiff's claims to a forum where they would quickly be dismissed as untimely under Ohio's borrowing statute, R.C. 2305.03(B). Pursuant R.C. 2305.03(B), "the rule … is that, if another state's substantive law applies to the underlying claim, then Ohio courts must use *the shorter* limitations period, as between Ohio's and that of the other state." Rose v. Bersa, 2020 WL 5210913, *10 (S.D. Ohio Aug. 31, 2020). Here, because Ohio does not have a revival statute, Ohio is the jurisdiction having the shorter limitations

53

period. Even Plaintiff does not dispute that under current Ohio law, her claims are uniformly untimely.

Plaintiff admits that her contrary theory – that her claims may still be timely because she was allegedly injured between 2001 and 2002, and Ohio's current borrowing statute did not go into effect until 2005 – finds no support in law.[23] Likely because it is wrong. Courts will not evade the plain language of a state's borrowing statute even where New York's revival statute for underage victims is at issue. See Kidder v. Hanes, 2023 WL 361200, at *6–7 (W.D.N.Y. Jan. 23, 2023) (where certain instances of abuse occurred in Pennsylvania, rather than New York, those claims were subject to New York's borrowing statute, which – like Ohio's – provides that the shortest limitation period controls. Because claims arising from plaintiff's abuse in Pennsylvania would be time-barred under Pennsylvania law, they were also untimely in New York – even though his claims based on abuse occurring in New York were revived).

## **CONCLUSION**

For these many reasons, the District Court's judgment should be affirmed.

---

[23] No citation is necessary for the proposition that the date a statute goes into effect governs claims *brought* after the effective date. Regardless of the time of her claims accrued, Plaintiff *brought* them after 2005. Ohio's borrowing statute therefore controls and would require dismissal of her claims.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)
Matthew S. Zeiger (Ohio Bar #0075117)
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
little@litohio.com
zeigerm@litohio.com

Attorneys For Defendants-Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(a)(7)(C) as follows:

1.      This brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B), as modified by Second Circuit Rule 32.1(a)(4)(A), because it contains 13,485 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point type.

Dated:  June 14, 2024                              /s/ Marion H. Little, Jr.
                                                   Marion H. Little, Jr.   (0042679)

56

## __CERTIFICATE OF SERVICE__

The undersigned hereby certifies that on June 14, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)

1032745

57